UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| THOMAS J. DOLAN,<br><br>    Plaintiff,<br><br>  v.<br><br>RALPH TAVARES, in his individual capacity, and DIANE CONNELL, in her individual capacity,<br><br>    Defendants. | C.A. 1:10-cv-10249-PBS |

## MEMORANDUM IN SUPPORT OF DEFENDANT RALPH TAVARES'S MOTION FOR SUMMARY JUDGMENT

Defendant Ralph Tavares submits this memorandum of law in support of his motion for summary judgment pursuant to Federal Rule of Civil Procedure 56(c). The Defendant is entitled to summary judgment because qualified immunity bars the Plaintiff's federal claim and the Court should decline to exercise supplemental jurisdiction over the remaining state law claims. Alternatively, if the Court were to exercise supplemental jurisdiction over the Plaintiff's state law claims, the Defendant should enter summary judgment on the state law counts as well.

This action arises out of a dispute at the Bristol County Superior Court law library in New Bedford, Massachusetts. The Plaintiff, Thomas Dolan ("Dolan"), was conducting legal research there when he became distracted by two other patrons who were having a conversation inside the library. After Dolan confronted the other patrons directly, Diane Connell ("Connell"), a law library assistant, spoke with Dolan and asked him to direct his complaints to her rather than confronting other patrons himself. Later, Ralph Tavares ("Tavares"), a court officer, allegedly approached Dolan, explained that he was making other patrons uncomfortable, and allegedly

1

introduced him to a uniformed officer who would be stationed nearby. Tavares later allegedly suggested that Dolan not come to the law library so often because his constant presence made people feel uncomfortable.

Following this incident, Dolan filed suit against Tavares and Connell claiming infringement of his First and Fourteenth Amendment rights in violation of 42 U.S.C. § 1983. Dolan further asserted a violation of the Massachusetts Civil Rights Act for interference with his constitutional rights, and brought various state law tort claims as well. On August 6, 2010, this Court dismissed all claims against Connell and claims against Tavares predicated on alleged collusion between Tavares and Connell. The Court further permitted a limited ninety-day discovery period on the issue of qualified immunity with respect to the remaining counts against Tavares.

Summary judgment should now be entered in favor of the Defendant because Tavares did not violate a clearly established constitutional right of Dolan's, and therefore qualified immunity bars Dolan's § 1983 claim (as well as his state civil rights claim). Because the Defendant is entitled to summary judgment on the federal claim in this case, the Court should decline to exercise jurisdiction over the remaining state law claims, or, in the alterative, enter summary judgment on those counts as well.

## SUMMARY OF MATERIAL UNDISPUTED FACTS[1]

On February 22, 2007, the Plaintiff, Thomas Dolan, was at the Bristol County Superior Court law library conducting research on First Amendment law regarding public library access in preparation for a separate action Dolan brought against the City of New Bedford. Statement of Undisputed Facts ("SUF"), ¶4. While conducting that research, Dolan became distracted by two

---

[1] The Defendant does not dispute the Plaintiff's factual allegations for the purposes of this summary judgment motion only. The Defendant reserves the right to dispute any of the Plaintiff's factual allegations recited herein should this action proceed to trial.

other patrons who were having a conversation inside the library.  SUF, ¶¶ 3-6.  Dolan decided to confront the two patrons himself and informed them that "conferencing" was prohibited by the law library's rules.  SUF, ¶ 6.  The two other patrons ceased their talking, and Dolan resumed his work.  *Id.*

Soon thereafter, Dianne Connell, a librarian, approached Dolan and reprimanded him for confronting the other patrons directly.  SUF, ¶ 7.  She explained that the other patrons had been doing "good work" and that any complaints about patrons should be brought to her rather than dealt with by Dolan himself.  SUF, ¶ 8.  Dolan's response was that it would be "unconstitutional" for the library to require him to direct his complaints about other patrons to Connell.  SUF, ¶8.  Connell also stated that Dolan's presence in the library made other law library patrons feel uncomfortable.  SUF, ¶ 9.  At this point, Dolan decided he would simply stop responding to Connell and resumed his reading.  *Id.*

Later the same day, Dolan relocated to the "auxiliary" part of the law library and began drafting a letter of complaint about his encounter with Connell.  SUF, ¶ 10.  While he was writing, Court Officer Ralph Tavares approached Dolan and allegedly explained that there were reports that Dolan made other people in the law library feel uncomfortable.  SUF, ¶ 11.  Tavares also allegedly introduced Dolan to a police officer who would be stationed nearby, and allegedly explained that if Tavares did not behave himself he would have him arrested.  SUF, ¶ 11-12.

Dolan's encounter with Tavares "unnerved" him and left him "unable to think clearly," so Dolan decided to leave the library.  SUF, ¶ 13.  On his way out, he again encountered Tavares and asked to speak with him in Tavares's office.  SUF, ¶ 14.  There, Tavares allegedly suggested that Dolan not come to the law library as often because his constant presence made people feel uncomfortable.  SUF, ¶ 15.  Dolan then left the library.  SUF, ¶ 19.

3

At no time did Tavares tell Dolan that he was forbidden from returning or that anything at all would occur if and when Dolan did return. SUF, ¶ 16. Tavares never intended to interfere with any of Dolan's constitutional rights, but rather spoke with him on February 22, 2007 only because he was concerned about the negative impact Dolan was having on other patrons using the law library. SUF, ¶ 17.

Dolan had no further contact with Tavares and never attempted to visit the library again, but instead filed suit against Tavares and Connell. SUF, ¶¶ 21-22. On August 6, 2010, this Court dismissed all claims against Connell, and all claims against Tavares predicated on a finding of joint action with Connell. SUF, ¶ 23.

## ARGUMENT

Summary judgment is properly entered when the record, including pleadings and any affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. *See Rogan v. City of Boston*, 267 F.3d 24, 36 (1st Cir. 2001). If the moving party has properly supported its motion for summary judgment, the burden shifts to the non-moving party, who "may not rest on mere allegations or denials of his pleading, but must set forth specific facts showing there is a genuine issue for trial." *Barbour v. Dynamics Research Corp.*, 63 F.3d 32, 37 (1st Cir. 1995). "A genuine issue exists if the record evidence is such that a *reasonable* factfinder could resolve it either way." *Rogan*, 267 F.3d at 27 (emphasis added). Although reasonable inferences are to be drawn in the nonmoving party's favor, a court must ignore "conclusory allegations, empty rhetoric, unsupported speculation, or evidence which, in the aggregate, is less than significantly probative." *Id.*

Here, the Defendant is entitled to summary judgment because qualified immunity bars the Plaintiff's federal claim as a matter of law even if all the Plaintiff's factual allegations are

4

assumed to be true. Because the Plaintiff's federal claim cannot stand, the Court should decline to exercise supplemental jurisdiction over the remaining state law claims, or, in the alternative, should issue summary judgment in the Defendant's favor on those claims as well.

**I.     Qualified Immunity Bars the Plaintiffs § 1983 Claim**

The doctrine of qualified immunity shields government officials from personal liability for civil damages "insofar as their conduct does not violate *clearly established* statutory or constitutional rights of which a *reasonable person* would have known." *Pearson v. Callahan*, 129 S. Ct. 808, 815 (2009) (*quoting Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)) (emphasis added). The "driving force behind creation of the qualified immunity doctrine was a desire to ensure that insubstantial claims against government officials [will] be resolved prior to discovery." *Id.* (internal quotation marks omitted). Because qualified immunity is immunity from suit rather than a mere defense to liability, the Supreme Court has "repeatedly . . . stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Id.*

The qualified immunity analysis generally follows a two-step procedure. First, a court must decide "whether the facts alleged or shown by the plaintiff make out a violation of a constitutional right." *Mosher v. Nelson*, 589 F.3d 488, 492 (1st Cir. 2009). If a violation is shown, a court must then decide "whether the right was '*clearly established*' at the time of the defendant's alleged violation." *Id.* (emphasis added). That inquiry "turns on the 'objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken.'" *Pearson*, 129 S. Ct. at 822.[2] Trial courts have discretion to address the "clearly established" step first, without determining whether any constitutional right has been

---

[2] A defendant's subjective state of mind is ***irrelevant*** to the second half of the qualified immunity analysis. Intent may, however, be relevant to the first half of the qualified immunity analysis if the alleged constitutional violation is intent-based. *Mihos v. Swift*, 358 F.3d 91, 103-07 (1st Cir. 2004).

violated. *Id.* at 492-93 (citing *Pearson*, 129 S. Ct. at 818-19).[3]

In short, for a government official to be civilly liable for a violation of a constitutional right, the official must have been objectively "on notice that his conduct violates established law." *Id.* If the official's conduct did not violate a clearly established constitutional right, qualified immunity bars the suit. *Pearson*, 129 S. Ct. at 816.

### a. Qualified Immunity Applies Because There was No Violation of a Constitutional Right

The first prong of the qualified immunity analysis asks whether the plaintiff has made out a constitutional violation. Even assuming that all of Dolan's factual allegations are true, no violation occurred because Dolan was never actually or constructively expelled or excluded from the law library, and Dolan has not shown the element of improper intent required to make out a prima facie case.

In the instant case, Dolan has alleged that he was denied access to the law library in violation of his First Amendment rights. *See* Amended Complaint, ¶ 2. To show that a deprivation of a First Amendment right has occurred, a plaintiff generally must at least demonstrate that the defendant "*intended* to inhibit speech protected by the First Amendment, and that the defendant's conduct had a chilling effect on the protected speech that was more than merely speculative, indirect or too remote." *Sheridan v. DeHart*, Civ. No. 02-412-M, 2003 WL 22050773 at *4 (D.N.H. Sept. 3, 2003) (emphasis added) (*citing Tatro v. Kervin*, 41 F.3d 9, 18 (1st Cir. 1994), and *Sullivan v. Carrick*, 888 F.2d 1, 4 (1st Cir. 1989)). The proper inquiry is

---

[3] The Plaintiff attempts to impugn the continuing validity of the two-step analysis by asserting that *Saucier v. Katz* (which mandated that the two steps be addressed in order) had been "unanimously overruled by the Supreme Court in *Pearson v. Callahan* . . . ." Pl.'s Opp. to Mot. to Dismiss at 11. This is a gross mischaracterization of the *Pearson* opinion. The *Pearson* court stated that the substance of the two-step qualified immunity analysis remained unchanged, but courts "should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances at hand." *Pearson v. Callahan*, 129 S.Ct. 808, 818 (2009). Indeed, lower courts remain free to follow the *Saucier* sequencing where it is "worthwhile." *Id.* at 822.

whether an official's action would "chill or silence a person of ordinary firmness from future First Amendment activities." *Id.*[4]

### i. *Tavares Did Not Violate Any Constitutional Right to Library Access Because Dolan Was Not Expelled or Excluded From the Library*

Dolan has failed to show a violation of his First Amendment rights because no action was taken that would "chill or silence a person of ordinary firmness from future First Amendment activities." *Sheridan*, 2003 WL 22050773 at *4. Specifically, Tavares never expelled Dolan from the law library and never told him that he could not return in the future. SUF, ¶ 16. There are likewise no allegations that Tavares threatened Dolan with any negative consequences if he returned. Indeed, Dolan has not alleged that he was banned or actually excluded from the law library; in fact, it was by his own choice that he has never attempted to return. SUF, ¶ 21. Instead, the Plaintiff merely alleges that Tavares told him that his presence made other patrons feel uncomfortable and that Tavares made one suggestion that he "not come to the law library so much any more." SUF, ¶ 15.

Dolan's allegation that these actions *discouraged* him from accessing the law library (even if assumed to be true) does not rise to the level of a First Amendment violation. Although federal courts have noted that "[u]nder *some* circumstances, indirect 'discouragements' undoubtedly have" a "coercive effect upon the exercise of First Amendment rights," *Georgine v. Amchem Products, Inc.*, 160 F.R.D. 478, 511 (E.D. Pa 1995) (collecting cases) (emphasis

---

[4] Likewise, a prima facie claim of retaliation by a government official against a non-employee plaintiff entails three elements: (1) the plaintiff engaged in protected conduct; (2) adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) the adverse action was motivated by the plaintiff's protected conduct. *See, e.g.*, *Hickson v. Bowler*, CIV 08-255-B-W, 2009 WL 742737 at *6 (D. Me. Mar. 17, 2009), *report and recommendation adopted*, 2009 WL 1975417 (D. Me. July 7, 2009) (stating elements and collecting citations). This memorandum does not address Dolan's primary First Amendment claim separately from his retaliation claim since the gravamen of each allegation is (1) a motive to interfere with Dolan's First Amendment rights; and (2) action by Tavares that would deter a person of ordinary firmness from continuing to engage in the First Amendment conduct. Furthermore, although Dolan also asserted Fourteenth Amendment violations, the only "deprivation" he has alleged to have suffered is an interference with his First Amendment rights. Thus, Dolan has no Fourteenth Amendment claim if his First Amendment allegations fail.

added), not every act of "discouragement" is unconstitutional. Indeed, the present case is easily distinguishable from contexts in which "discouragement" has been held to be a First Amendment violation.

Cases in which courts have found "discouragement" unconstitutional all involve more extremely punitive action than what Tavares allegedly did. For example, the Ninth Circuit has held that First Amendment concerns are present when a statute disqualifies a person from holding union office because of Communist views even if there is no direct punishment for holding such views. *Brown v. United States*, 334 F.2d 488, 493-94 (9th Cir. 1964). More recently, the Ninth Circuit found a First Amendment violation where a prison policy punished inmates for not cutting their hair since the policy placed substantial pressures on the petitioner to violate his religious beliefs regarding hair length. *Warsoldier v. Woodford*, 418 F.3d 989, 996 (9th Cir. 2005). Similarly, the Supreme Court has noted that requiring adherents of a particular faith or political view wear an identifying arm-band would rise to the level of unconstitutional discouragement. *Am. Commc'ns Assoc. v. Douds*, 339 U.S. 382, 402 (1950). The Court also found a constitutional violation where a statutory scheme subjected certain organizations to complex regulatory hurdles that made political speech "a severely demanding task," though not expressly forbidden. *Fed. Election Comm'n v. Mass. Citizens for Life, Inc.*, 479 U.S. 238, 256 (1986).

In each of these examples, the "discouragement" involved was a substantially severer impediment to First Amendment activity than any action allegedly taken by Tavares. The single suggestion that Dolan spend less time at the law library clearly would not produce the kind of "coercive effect" that would keep a person of ordinary firmness from exercising his First Amendment rights.

Nor does the analysis change in light of Dolan's allegations that Tavares posted a police officer nearby and stated that he could be arrested if he did not "behave." Dolan has not alleged that the officer made any attempt to arrest him, physically intimidate him, or interact with him in any way while he was working. The officer did not even allegedly speak to him until Dolan was already leaving the library. *See* Amended Complaint, ¶42. Furthermore, even if it were true that Tavares had stationed the officer near the Plaintiff, the mere act of posting an officer to observe a patron such as Dolan (who earlier in the day had confronted other library patrons and had an altercation with a library staff member) is not unconstitutional "discouragement"; it is sound library management. This is especially so in light of the fact that the officer – at most – observed Dolan in silence.

Although Tavares's alleged actions – posting the officer, telling Dolan he could be arrested if he did not behave, explaining that he made patrons feel uncomfortable, and suggesting that he not spend as much time at the law library – might have made Dolan subjectively feel unwelcome, these actions are wildly dissimilar from the kind of "discouragement" that courts have held to be unconstitutional. Not all "discouragement" of First Amendment activities rises to the level of a constitutional violation. As stated above, only actions producing the kind of coercive effect that would dissuade "a person of ordinary firmness" from future protected conduct raises constitutional concerns, and no such action has been alleged.

> **ii.** *Tavares's Actions Were Not Motivated By an Intent to Inhibit First Amendment Activity.*

Even if Tavares's alleged actions were interpreted as constructively excluding Dolan from the law library, the Plaintiff has nevertheless failed to show a constitutional violation because the Plaintiff has not demonstrated that Tavares intended to inhibit conduct protected by the First Amendment, a required element of a prima facie First Amendment claim. *Sheridan*,

9

2003 WL 22050773 at *4. None of the allegations made by the Plaintiff suggest that Tavares's motive was to interfere Dolan's rights to access the law library.[5] Instead, the Amended Complaint on its own terms suggests that Tavares was motivated out of a desire to maximize all patrons' ability to use the law library.

For example, following the morning confrontation between Dolan and two other patrons (and the argument between Dolan and Connell), Tavares did not eject Dolan from the library. Instead, he allegedly posted an officer nearby and warned Dolan that he would escalate the situation *if* Dolan did not "behave." *See* SUF, ¶ 11-12. Likewise, after explaining to Dolan that his constant presence made other patrons uncomfortable, Tavares did not suggest that Dolan never return to the library but instead suggested that he not come to the law library so often. *See* SUF, ¶ 15. In each instance, the logical conclusion from the facts alleged is that Tavares was acting with the intent to maximize all patrons' use of the library.

This common-sense conclusion is borne out by Tavares's Affidavit, attached to the Defendant's Statement of Undisputed Material Facts as Exhibit A. In his affidavit, Tavares states that he never intended to interfere with Dolan's right to access the law library. SUF, ¶ 18. Rather, Tavares spoke with Dolan because he was concerned about the negative impact Dolan was having on other patrons using the library and sought to ensure that library rules were enforced in an orderly way. SUF, ¶ 17. Doing so would maximize the peaceful use of the library by all patrons, including Dolan. The Plaintiff has demonstrated no facts impugning Tavares's explanation of his motive, and thus the Plaintiff cannot make out a prima facie case of a First Amendment violation.

---

[5] Moreover, as discussed in Part (b)(i) below, the boundaries of that right are not clearly established.

> **b. *Even if Dolan's Constitutional Rights Were Violated, Qualified Immunity Nevertheless Applies Because Dolan's Rights Were not "Clearly Established," and an Objectively Reasonable Official Would Not Have Known Tavares's Actions Were Unconstitutional***

The second prong of the qualified immunity analysis – determining whether a right was "clearly established" – comprises two distinct questions: First, whether the "contours of the right" were clear enough that a reasonable official would understand the boundaries of that right, and second, whether a reasonable defendant would have understood that his conduct in the specific context of the case violated that constitutional right. *Mosher v. Nelson*, 589 F.3d 488, 493 (1st Cir. 2009). In other words, the second prong of the qualified immunity analysis requires that a court consider

> the status of the law at the time of the event in question, ***focusing on the clarity of the standard*** with respect to the asserted constitutional right. . . . [and] the specific factual context of the case to determine whether a ***reasonable official*** in the defendant's place would have understood that his conduct violated the asserted constitutional right.

*Id.* (emphasis added) (internal citations omitted). In short, the analysis "turns on the 'objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken.'" *Pearson*, 129 S. Ct. at 822. That determination is a question of law. *See Clancy v. McCabe*, 441 Mass. 311, 323 (2004). A defendant's subjective state of mind is irrelevant to this inquiry. *Mihos v. Swift*, 358 F.3d 91, 104-05 (1st Cir. 2004).[6]

> **i. *The Boundaries of the Right to Access a Public Library Are Not Clearly Established***

An area of law is "clearly established" for the purposes of a qualified immunity analysis

---

[6] Although a district court in Florida stated otherwise when addressing facts similar to those in the instant case, *see Hunt v. Hillsborough County*, No. 8:07-cv-1168-T-30TGW, 2008 WL 4371343 (M.D. Fla. Sept. 22, 2008), the Florida court's opinion overlooked a critical distinction in the circuit court precedent it was applying. Specifically, the district court cited *Bogle v. McClure* for the proposition that qualified immunity is *only* available where "the record *indisputably* establishes that the defendant in fact was motivated, *at least in part*, by lawful considerations." *Hunt*, 2008 WL 4371343, at *4. However, this was true in *Bogle* only because the appellants there had previously waived the "clearly established right" argument. *See Bogle v. McClure*, 332 F.3d 1347, 1355 n.5 (11th Cir. 2003). That is, there was no second half to the qualified immunity analysis in *Bogle*.

11

if "courts have previously ruled that materially similar conduct was unconstitutional, or if a general constitutional rule already identified in the decisional law applies *with obvious clarity* to the specific conduct at issue." *Mosher*, 589 F.3d at 493 (emphasis added). In an evolving area of law (such as First Amendment jurisprudence), "there will be a range extending from an established core to outer boundaries where there is not clearly established law." *Id.* Although it may be clearly established that access to public libraries implicates the First Amendment, it is *not* clearly established that such rights extend as far as the Plaintiff has claimed.

This Court noted in its August 6 Order that it "recognized that access to the public libraries *implicates* the First Amendment, falling in line with several other Districts" Mem. and Order (Aug. 6, 2010), Docket No. 15, at 8 (emphasis added). However, the contours of the right "implicate[d]" are not at all clearly established. Indeed, the leading case on public library access, *Kreimer v. Bureau of Police*, held only that the First Amendment guaranteed "*some* level of access" to a public library.[7] *Kreimer v. Bureau of Police*, 958 F.2d 1242, 1255 (3rd Cir. 1992) (emphasis added).

What level of access constitutes the constitutionally-required "some level of access" remains unclear. Whether a patron who makes frequent use of a library or who causes other patrons discomfort can be asked or urged to modify his behavior are questions unanswered in case law. Likewise, precedent offers no guidance as to whether the First Amendment is implicated at all if a library patron's access is *reduced* but not eliminated, or discouraged but not prohibited. Although cases such as *Wayfield* speak of the First Amendment being relevant to

---

[7] Notably, the only decision from within the First Circuit cited in the Plaintiff's pleadings and motion papers (or in the Court's August 6 Order) stating that public library access implicates the First Amendment is *Wayfield v. Town of Tisbury*, 925 F. Supp. 880 (D. Mass. 1996), a case which directly cites *Kreimer* as authority for the proposition. *See Wayfield*, 925 F. Supp. at 888; *see also Brinkmeier v. City of Freeport*, No. 93 C 20039, 1993 WL 248201 at *3 (N.D. Ill. July 2, 1993) (embracing the *Kreimer* analysis and stating that the right "is not without limits").

12

library access, none of the principles in decided cases apply "*with obvious clarity* to the specific conduct at issue," namely conduct that was – at most – designed to induce the Plaintiff to spend *less* time at the library without imposing any actual or absolute prohibitions. *Mosher*, 589 F.3d at 493 (emphasis added).

Although the Plaintiff's motion papers attempt to portray the library access right as clearly established and clearly applicable to the facts of this case, he does so by mischaracterizing numerous cases. For example, Dolan cites *Bogle v. McClure*, 332 F.3d 1347 (11th Cir. 2003), for the proposition that state actors were held liable under § 1983 for "damages caused by their unlawful transfer of plaintiffs *from* the library of their choice *to* some other library." Pl.'s Opp'n to Mot. to Dismiss at 2. *Bogle*, however, did not involve library patrons such as Dolan. Rather, the plaintiffs in Bogle were librarians who sued their employers for discrimination after they were transferred to "dead-end jobs" at another library because of their race. *Bogle*, 332 F.3d at 1350.

Similarly, Dolan cites *Schneider v. State*, 308 U.S. 147 (1939), for the proposition that "[e]xercise of liberty of [mind] in appropriate places [cannot be] abridged on the plea that it may be exercised in *some other place*." Pl.'s Opp'n to Mot. to Dismiss at 2. *Schneider*, however, involved municipal laws that acted as absolute bans on the distribution of handbills on any public streets. Not only does Dolan's claim rest on a fundamentally different aspect of First Amendment law (i.e., "access to information" rather than expressive activity in a public forum), but Dolan also has never alleged that he was actually banned from accessing the law library.

While it may be clearly established that the First Amendment guarantees "some level of access" to public libraries, the boundaries of that right are far from clear. Specifically, no cases address directly (or could be applied by extension with obvious clarity to) the specific factual

allegations of this case. Therefore, qualified immunity applies to Tavares's alleged conduct and bars the Plaintiff's civil rights claims.

### ii. *An Objectively Reasonable Official Would Not Have Known that the Conduct at Issue Was Unconstitutional*

Qualified immunity also bars this suit because an objectively reasonable state official operating in this specific factual context would not have known that Tavares's alleged conduct violated Dolan's constitutional rights. *See Mosher v. Nelson*, 589 F.3d 488, 493 (1st Cir. 2009) (qualified immunity applies if "a reasonable official in the defendant's place would [not] have understood that his conduct violated the asserted constitutional right"). None of Tavares's alleged conduct involved a direct infringement of Dolan's access to the library: Tavares did not eject him from the library, did not ban him from returning, and did not impose any penalty upon him. Instead, Tavares allegedly explained that Dolan made other patrons uncomfortable, allegedly posted an officer nearby after the morning's confrontations, and allegedly suggested that Dolan spend less time at the library.

Even if the Court were to determine that these actions constitute sufficiently coercive conduct to chill a person of ordinary firmness from future First Amendment activities, this would not have been objectively clear to a reasonable official in Tavares's place. Tavares's conduct was designed not to inhibit anyone's access to the law library but instead to maximize the ability of all patrons to use the space. SUF, ¶ 15-18. Moreover, as explained in Part I(a)(i) above, indirect First Amendment "discouragement" cases all discuss significantly severer conduct than what Tavares allegedly did. Thus, a reasonable official would not have been on notice that the kind of de minimus "discouragement" involved here amounted to a violation of constitutional rights, especially because the contour of those alleged rights remains ill-defined.

Because the boundaries of the library access right are not clearly defined with regard to

the factual context of this case and because a reasonable official would not have known that the conduct alleged would have violated a constitutional right, qualified immunity applies and shields Tavares from liability. Accordingly, the Court should enter summary judgment in favor of the Defendant on the Plaintiff's § 1983 claim.

**II.    Because the Defendant is Entitled to Summary Judgment on the Federal Claim, the Court Should Decline to Exercise Supplemental Jurisdiction Over the Remaining State Law Claims**

Although this Court has supplemental jurisdiction over state law claims joined to the Plaintiff's federal claim in this case, a district court may decline to exercise such supplemental jurisdiction if it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine – judicial economy, convenience, fairness, and comity – will point toward declining to exercise jurisdiction over the remaining state-law claims." *Newman v. Burgin*, 930 F.2d 955, 964 (1st Cir. 1991) (*quoting Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)); *see also Martinez v. Colon,* 54 F.3d 980, 990 (1st Cir.1995) (affirming the dismissal of pendent claims when the district court determined "far in advance of trial that no legitimate federal question existed"). Because the Defendant is entitled to summary judgment on the federal law claim in this case, the Court should decline to exercise further jurisdiction over the state law claims.

This case has not progressed to a point that it would be prejudicial to the Plaintiff or otherwise imprudent for the Court to dismiss the state law counts. Although a limited ninety-day discovery period was permitted on August 6, 2010, the scope of that discovery was expressly restricted to issues of qualified immunity, which do not related to the Plaintiff's state tort law claims. *See* Mem. and Order (Aug. 6, 2010), Docket No. 15, at 16. While qualified immunity

15

issues are relevant to the Massachusetts Civil Rights Act claim, the issues under that statute and § 1983 are effectively identical. *See* Part III(a), *infra*. Thus, no discovery resources would be wasted if the state law claims were dismissed at this time.

**III.    If the Court Does Exercise Jurisdiction over State Law Claims, the Court Should Grant Summary Judgment on Those Claims As Well**

The Amended Complaint raises four state law claims: interference with constitutional rights in violation of the Massachusetts Civil Rights Act, Defamation, Intentional Infliction of Emotional Distress, and Intentional Interference with an Advantageous Relationship. *See* Amended Complaint, Counts IV, VII-IX. The Court should decline to exercise supplemental jurisdiction over these claims because the Defendant is entitled to summary judgment on the only federal law claim. In the alternative, however, the Defendant is entitled to summary judgment as to each state law claim as a matter of law.

   *a. The Same Defenses Apply to the Massachusetts Civil Rights Act As Apply to the Federal § 1983 Claim*

The same immunities for public officers regarding federal § 1983 claims apply to actions pursuant to the Massachusetts Civil Rights Act § 11*I*. In particular, state actors cannot be held liable unless they violated a clearly established constitutional right. *Duarte v. Healy*, 537 N.E.2d 1230, 1232 (Mass. 1989); *see also* 39 *Mass. Practice, Admin. Law & Practice* § 1068 (2010). The Defendant is thus entitled to summary judgment on the Massachusetts Civil Rights count for the same reasons as discussed above regarding the federal § 1983 claim.

   *b. The Defamation Claim is Deficient as a Matter of Law*

To withstand a motion for summary judgment for defamation, a plaintiff must show (among other things) that the "defendant was at fault" in making a false statement – an element which requires a showing of negligence if the statements concern private persons. *Ravnikar v.*

16

*Bogojavlensky*, 782 N.E.2d 508, 510-11 (Mass. 2003); *see also White v. Blue Cross & Blue Shield of Mass., Inc.*, 809 N.E.2D 1034, 1036 (Mass. 2004).  Plaintiff has not met this burden.  Although Count VII of the Amended Complaint concludes that Tavares "published the false and defamatory communication that plaintiff Dolan was so inclined to commit a criminal offense in the law library" that he would be arrested, Dolan's own  factual allegations belie this conclusory, unsupported statement.  Dolan's particular factual allegation is that Tavares stated that "*if* plaintiff Dolan did not behave himself," *then* he could be arrested.  Amended Complaint, ¶ 40 (h).  Dolan has not alleged that Tavares, as a court officer, lacked the authority to effect such an arrest.  Thus, the Plaintiff has not alleged that Tavares made a false statement.  Furthermore, because the statement was not false, Dolan has not and cannot meet his burden of showing that Tavares was *negligent* in making a false statement.

### c. *The Intentional Infliction of Emotional Distress Claim is Deficient as a Matter of Law*

The tort of intentional infliction of emotional distress entails conduct that is "extreme and outrageous . . . beyond all possible bounds of decency and . . . utterly intolerable in a civilized community." *Agis v. Howard Johnson Co.*, 355 N.E.2d 315, 319 (Mass. 1976).  Furthermore, to state a successful claim, the emotional distress sustained by the plaintiff must be "'severe' and of a nature 'that no reasonable man could be expected to endure it.'" *Id.*  "Liability cannot be predicated on mere insults, indignities, threats, annoyances, petty oppressions or other trivialities nor even is it enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by malice or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort." *Tetrault v. Mahoney, Hawkes & Goldings*, 681 N.E.2d 1189, 1197 (Mass. 1997) (internal quotation marks omitted).

17

Here, Dolan has not alleged any actions by Tavares that were beyond all possible bounds of decency and utterly intolerable in a civilized community. Moreover, regardless of what emotional discomfort Dolan may have felt having an officer stationed nearby or being told he made other patrons feel uncomfortable, he has raised no facts plausibly suggesting that he suffered severe emotional distress of the kind no reasonable person could be expected to endure. By contrast, the facts alleged by Dolan indicate at most "bad manners and mere hurt feelings," which are insufficient to state a claim. *Agis*, 355 N.E.2d at 319.

### d. Dolan Did Not Have an "Advantageous Relationship" With the Library Within the Meaning of the Intentional Interference Tort

The first element a plaintiff must prove to state a claim of interference with an advantageous relationship is "(1) a business relationship or contemplated contract of economic benefit." *Comey v. Hill*, 438 N.E.2d 811, 816 (Mass. 1982). Dolan had neither a business relationship nor an actual or contemplated contractual relationship with the law library. Therefore, his claim must fail as a matter of law.

## CONCLUSION

For the reasons stated in detail above, the Court should enter summary judgment in favor of the Defendant on the Plaintiff's federal law claims and either decline to exercise jurisdiction over the state law claims or, in the alternative, enter summary judgment in favor of the Defendant on the state law counts as well.

        Ralph Tavares,
        By his Attorneys

        MARTHA COAKLEY
        ATTORNEY GENERAL


        /s/ Liza Tran_____
        Liza Tran, BBO # 646818
        Assistant Attorney General
        Government Bureau/Trial Division
        One Ashburton Place, Room 1813
        Boston, MA  02108
        (617) 727-2200, Ext. 2920
        liza.tran@state.ma.us


Date: November 30, 2010


## CERTIFICATE OF SERVICE

    I, Liza Tran, Assistant Attorney General, hereby certify that I have this day, November 30, 2010, served the foregoing Memorandum in Support of the Defendant's Motion to Dismiss upon all parties, by electronically filing to all ECF registered parties and by sending a copy, first class mail, postage prepaid to all unregistered parties.

        /s/ Liza Tran_____
        Liza Tran